**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SALVADOR AGREDANO,** | CASE NO. 18-cv-06865-YGR |
| Plaintiff, | |
| vs. | **ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND** |
| **CAPITAL ONE, NATIONAL ASSOCIATION, ET AL.,** | Re: Dkt. Nos. 8, 12 |
| Defendants. | |

Now before the Court are two motions to dismiss *pro se* plaintiff Salvador Agredano's complaint, (*see* Dkt. No. 1 ("Compl.")), pursuant to Federal Rule of Civil Procedure 12(b)(6), namely one filed by defendant Real Time Resolutions, Inc. ("Real Time"), (Dkt. No. 8 ("RMTD")), and the other filed by Capital One, N.A. ("Capital One"), (Dkt. No. 12 ("CMTD")).[1] Having carefully considered the pleadings in this action and the papers submitted, and for the reasons set forth below, the Court **GRANTS** both motions to dismiss but affords plaintiff **LEAVE TO AMEND** as set forth herein.[2]

**I. BACKGROUND**

The following facts are based on the allegations of plaintiff's complaint and judicially noticeable documents:

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court previously vacated the hearing on the motions. (Dkt. No. 27.)

[2] In connection with their motions to dismiss, Real Time and Capital One each request that the Court take judicial notice of documents which are either (i) publicly recorded in Alameda County, or (ii) available on government websites. (*See* Real Time's Request for Judicial Notice ISO MTD ("RRJN"), Dkt. No. 10; Capital One's Request for Judicial Notice ISO MTD ("CRJN"), Dkt. No. 13.) These documents are all available publicly. Accordingly, the Court **GRANTS** both unopposed requests to take judicial notice of these public records and will take proper evidentiary view of the materials. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original); *see also* Fed. R. Evid. 201(b)(2).

In 2004, plaintiff contends that he and Countrywide Home Loan, Inc. ("Countrywide") executed a mortgage loan agreement in the amount of $55,000 and deed of trust, causing the loan to be secured by real property located at 100 Wendy Court, Union City, California 94587 (the "Subject Property"). (Compl. ¶¶ 3,6.)

In August 2007, plaintiff obtained a Home Equity Line of Credit ("HELOC") in the amount of $65,000, secured by an Open-Ended Deed of Trust/Line of Credit Trust Deed against the Subject Property. (CRJN Exh. A, Dkt. No. 13-1.)[3] The beneficiary of the HELOC was Mortgage Electronic Systems, Inc. ("MERS"), as nominee for GreenPoint Mortgage Funding, Inc. ("GreenPoint").[4] (*Id.*)[5] On August 8, 2018, MERS assigned its beneficial interest under the Deed of Trust to "RRA CP Opportunity Trust 1," (CRJN Exh. E, Dkt. No. 13-5), which is apparently connected to Real Time. (Compl. ¶ 13).

Plaintiff alleges that on or about February 28, 2018, he sent a written correspondence to Real Time, which he claims constituted a Qualified Written Request ("QWR"). (Compl. ¶ 7.) Plaintiff claims that the request "pertained to the servicing of the loan because it sought an accounting and documentation to justify the balance that Real Time claims is owed on the Mortgage." (*Id.*) Plaintiff asserts that Real Time "failed to provide an accounting to justify the balance it claims is owed." (*Id.*) However, according to the complaint, at an unspecified point in time, Real Time provided plaintiff with "a document indicating a $65,000 home equity line of credit ('HELOC') with [p]laintiff paying $3,670.58 at closing." (*Id.* ¶ 12.) According to plaintiff, requiring him to pay $3,670.58 at the closing of a HELOC is "nonsensical and fraudulent." (*Id.*)

---

[3] According to Capital One, plaintiff incorrectly alleges that he obtained a loan from Countrywide in 2004. (*See* CMTD at 3.) On amendment, plaintiff should clarify. For now, given that plaintiff has sued Capital One and Real Time, the Court proceeds under the assumption that the HELOC is the loan at issue in plaintiff's complaint irrespective of whether the loan with Countrywide is a mistake or preceded the instant HELOC.

[4] Capital One concedes that it is the parent company of GreenPoint, and Capital One is a current defendant here. The complaint, however, does not so allege, and plaintiff may provide clarification in this regard on amendment. (*See* CMTD at 3 n.1.)

[5] Subsequent to the execution of the HELOC, over the course of over ten years, there was a series of assignments of the beneficial interest in the HELOC between MERS and GreenPoint. (*See* CJRN Exh. B, Dkt. No. 13-2 ("Assignment of Deed of Trust"); *id.* Exh. C, Dkt. No. 13-3; and *id.* Exh. D, Dkt. No. 13-4.)

Plaintiff claims that on or about April 16, 2018, Real Time communicated to him that "[RRA CP] Opportunity Trust is an investor of the Loan." (*Id.* ¶ 13.) According to plaintiff, "[s]uch communication is false and a misrepresentation because in actuality, . . . the address of [RRA CP] Opportunity Trust is the same address as Real Time and the Loan's ownership documents contained fabricated documents with forged signatures." (*Id.*)

Plaintiff asserts that on or about July 25, 2018, GreenPoint sold the HELOC's debt to Real Time. (*Id.* ¶ 8.) Plaintiff claims that this transfer was fraudulent, and thus that Real Time "has no rights to the Loan[,]" because "at the time of transfer, Greenpoint was not a legally active corporate entity since 2011." (*Id.*) Plaintiff further contends that "the assignment from the Deed of Trust contains a forged signature by Miguel Romero." (*Id.*)[6]

Plaintiff alleges that on August 18, 2018, he sent a written correspondence to Capital One, which plaintiff contends also constituted a QWR. (*Id.* ¶ 11.) Plaintiff claims that this request similarly "pertained to the servicing of the loan because it sought an accounting and documentation to justify the balance that Real Time claims is owed on the Mortgage." (*Id.*) Plaintiff asserts that Capital One did not provide a response until four days later, on August 22, 2018. (*Id.*)

On the basis of these allegations, plaintiff asserts four causes of action: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (3) fraud; and (4) misrepresentation. (*See* Compl. at pp. 4–12.)

**II.   LEGAL FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[6] The Court notes that the exhibit cited in paragraph 8 of plaintiff's complaint does not show a transfer of the HELOC's debt from GreenPoint to Real Time. Rather, it shows that on July 25, 2018, Real Time, on behalf of GreenPoint, executed a corporate assignment of the deed of trust, under which GreenPoint assigned its beneficial interest in the HELOC to MERS. (*See* Compl. at ECF p. 16.) The court accepts plaintiff's allegations as true at this stage of the proceedings, but plaintiff should clarify his allegations on amendment.

3

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require the "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). The Court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the Court required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted).

Further, a plaintiff must state claims grounded in fraud with particularity. Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id*. (internal quotation marks omitted) (alteration in original). Rule 9(b) applies to cases brought in federal court irrespective of whether the substantive law is state or federal law. *Id*. at 1102.

*Pro se* complaints are held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and complaints by *pro se* plaintiffs are liberally construed, *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). A *pro se* litigant should be given leave to amend his complaint unless it is absolutely clear that no amendment could cure the deficiencies of the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc); *Barrett v.*

4

*Belleque*, 544 F.3d 1060, 1061–62 (9th Cir. 2008) (per curiam).

**III. DISCUSSION**

Plaintiff does not specify the defendant(s) against which each cause of action is asserted. However, it appears from the complaint as pled that all four are asserted against Real Time. Moreover, plaintiff offered no response to Capital One's argument that the second cause of action for violation of the FDCPA contains no allegations against Capital One or Greenpoint. Thus, the Court finds that the second cause of action is not asserted against Capital One. *See Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence."). The Court proceeds with its analysis accordingly.[7]

### A. First Cause of Action: RESPA Violation

Plaintiff asserts that: (i) Real Time failed to respond to his first QWR; and (ii) Capital One responded to a separate QWR, albeit not until four days after the QWR was sent. (Compl. ¶¶ 17–18.)

RESPA provides that borrowers may inquire about federally related mortgages by submitting a QWR. 12 U.S.C. § 2605(e)(1)(A). A QWR must describe why a borrower believes her account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower. *Id.* § 2605(e)(1)(B). "If any servicer of a federally related mortgage loan receives a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . ." *Id.* § 2605(e)(1)(A). "That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes

---

[7] Plaintiff filed a surreply brief without seeking leave of the Court as is required by Civil Local Rule 7-3(d). (*See* Dkt. No. 36.) Given plaintiff's *pro se* status, and in the interest of justice, the Court has reviewed all of the arguments raised by plaintiff. However, the Court advises plaintiff to comply with the Civil Local Rules going forward. The surreply does not object to any evidence submitted in Real Time's reply (indeed, there is no such evidence), or present authority that was previously unavailable to plaintiff. It presents additional legal argument in opposition to Real Time's motion to dismiss. The Court advises plaintiff that additional argument is not a proper basis for filing supplementary material without prior Court approval. *See* Civ. L.R. 7-3(d)(1).

5

a duty upon the loan servicer, and not the owner of the loan." *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009). RESPA provides plaintiffs with a private right of action for, among other wrongful acts, a loan servicer's failure to respond in a specific manner to a QWR for information about the loan. 12 U.S.C. . § 2605(f); *see also Choudhuri v. Wells Fargo Bank, N.A.*, No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal. Nov. 8, 2010)). "A plaintiff alleging violation of § 2605 must show: (i) that the servicer failed to adhere to the rules governing a QWR; and (ii) that the plaintiff incurred 'actual damages' as a consequence of the servicer's failure." *Givant v. Vitek Real Estate Indus. Grp., Inc.*, No. 2:11-cv-03158-MCE-JFM, 2012 WL 2912357, at *6 (E.D. Cal. July 16, 2012). "These damages must flow from the failure of the servicer to provide the information sought by the plaintiff through the QWR." *Id*. The Court addresses plaintiff's RESPA claim below.

### *1. As Against Real Time*

Real Time moves to dismiss plaintiff's RESPA claim on the grounds that: (i) plaintiff does not allege facts showing his letter constituted a QWR; (ii) Real Time responded to plaintiff's alleged QWR; and (iii) plaintiff fails to plead that he suffered any damages as a result of the purported RESPA violation.

First, the Court disagrees that plaintiff's letter did not constitute a QWR as pled. Plaintiff alleges that his correspondence to Real Time "sought an accounting and documentation to justify the balance that Real Time claims is owed on the Mortgage." (Compl. ¶ 17.) Requests for "information related to accounting and billing disputes, such as unauthorized charges," are "typical[]" of a QWR. *McCorgary v. Ocwen Loan Servicing, LLC*, No. 8:17-cv-1120 DOC (KSx), 2017 WL 8230032, at *4 (C.D. Cal. Sept. 11, 2017); *see also Krasucki v. Nationstar Mortg., LLC*, No. C15-0229JLR, 2015 WL 11251850, at *3 n.2 (W.D. Wash. July 8, 2015) (finding that a letter questioning the accuracy of the plaintiff's loan balance constituted a QWR). Real Time's contention that plaintiff's letter asked for information "to establish the [HELOC's] validity and its terms for calculating payments" mischaracterizes plaintiff's allegations, which establish that

plaintiff made an identifiable inquiry as to his loan balance. (RMTD at 7.)[8] Moreover, while plaintiff does not allege that his letter included a "statement of reasons" for his belief "that the account is in error," this shortcoming is not fatal to his RESPA claim against Real Time in light of the Ninth Circuit's broad interpretation of what constitutes a QWR. Thus: "Any reasonably stated written request for account information can be a qualified written request. *To the extent that a borrower is able to provide reasons for a belief that the account is in error*, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a [QWR] and thus to trigger the servicer's obligations to respond." *Medrano*, 704 F.3d at 666 (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)) (emphasis supplied); *see also Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (plaintiff's request constituted a QWR notwithstanding failure to include a statement of the reasons for the borrower's belief that the account was in error). Accordingly, construed in the light most favorable to plaintiff, his February 28, 2018 letter was, on its face, a QWR.

Second, contrary to Real Time's argument, it is not clear from the complaint that the document provided by Real Time indicating "a $65,000 [HELOC] with [p]laintiff paying $3,670.58 at closing[,]" (Compl. ¶ 12), provided the information requested, namely the loan *balance*. Moreover, the complaint does not indicate the timing of Real Time's correspondence, such that it can be said to have occurred *in response to* plaintiff's alleged QWR.

**Third, and despite the foregoing, the Court agrees with Real Time that plaintiff has not pleaded actual harm causally connected to the alleged RESPA violation.**[9] Plaintiff makes the following general allegations:

> Plaintiff was damaged as a result of [d]efendant's failure to respond since [p]laintiff

---

[8] The Court notes that a request for "validation" of the loan's balance, (Compl. ¶ 19), is different from a request challenging the loan's underlying validity. The former may constitute a QWR, while the latter may not. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666–67 (9th Cir. 2012) ("'Servicing,' so defined, does not include . . . facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events *precede* the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors.") (emphasis in original).

[9] For plaintiff's benefit, the Court **bolds** the portions of the Order which identify the precise failures of the complaint which should be addressed on amendment.

7

> made numerous mortgage payments to a fraudulent loan balance. As a result of such payments, [d]efendant has been unjustly enriched while [p]laintiff has incurred court fees to enforce his legal rights and has suffered the slander of his representation due to the fact that an illegitimate loan balance has been attributed to him and reported to credit reporting agencies and bureaus.

(*Id*. ¶ 21.) As a preliminary matter, court fees are *not*, as a matter of law, actual damages caused by a RESPA violation. *See Goulatte v. CitiMortgage, Inc.*, No. EDCV 12-391 PSG (SPx), 2014 WL 12561620, at *4 (C.D. Cal. June 5, 2014) ("Federal courts in California have consistently held that legal fees and costs are not recoverable RESPA damages . . . "); *Durland v. Fieldstone Mortg. Co.*, No. 10CV125 JLS (CAB), 2011 WL 805924, at *4 (S.D. Cal. Mar. 1, 2011) (concluding that plaintiff's "allegation that he incurred legal costs" is insufficient to plead actual damages under RESPA); *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1221 (E.D. Cal. 2010) ("Nor does simply having to file suit suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in.").[10]

**Next, plaintiff does not explain how Real Time's failure to respond to his alleged QWR *caused* him to make numerous payments to a "fraudulent loan balance."** (*Id*. ¶ 21.) *See* 12 U.S.C. § 2605(f)(1)(A) (providing that any injury must be "a result of the failure" to comply with RESPA); *see also Rubio v. U.S. Bank N.A.*, No. C. 13-05752 LB, 2014 WL 1318631, at *15 (N.D. Cal. Apr. 1, 2014) ("RESPA claims [are limited] to circumstances in which a plaintiff can allege specific facts to show causation—'actual damages to the borrower as a result of the failure [to comply with RESPA requirements].'") (quoting *Lal*, 680 F. Supp. 2d at 1223); *Lal*, 680 F. Supp. 2d at 1223 ("[t]o sustain a RESPA claim for actual damages[,]" the damages must be "a *direct result* of the failure to comply") (emphasis supplied). By the same token, "[w]ithout [a causal link], [plaintiff's] allegations of . . . negative credit reporting . . . are insufficient to state a claim" for failure to respond to a QWR under REPSA. *Durland*, 2011 WL 805924, at *3; *see also Anokhin v. BAC Home Loan Servicing, LP*, No. 2:10-cv-00395-MCE-EFB, 2010 WL 3294367, at

---

[10] As a general matter, courts have found that "[a]ctual damages may include, but are not limited to, (1) out-of pocket expenses incurred dealing with the RESPA violation, (2) lost time and inconvenience to the extent it resulted in actual pecuniary loss, and (3) late fees." *Wanger v. EMC Mortg. Corp.*, 103 Cal. App. 4th 1125, 1137 (2002).

8

*3 (E.D. Cal. Aug. 20, 2010) ("Plaintiff's conclusory statement that she suffered negative credit ratings does not itself establish actual damages.").

Because plaintiff has not linked his monetary or credit rating damages to Real Time's alleged wrongful conduct, his RESPA claim as asserted against Real Time is **DISMISSED**. As it is possible that the insufficient allegations might be cured on amendment and because plaintiff is proceeding *pro se*, he will be given **LEAVE TO AMEND** his RESPA claim against Real Time. On amendment, plaintiff should specify how his damages "flow from the failure of the servicer to provide the information sought . . . through the QWR." *Id.* at *3.

### *2. As Against Capital One*

Plaintiff's RESPA claim as asserted against Capital One also fails.

**First, plaintiff fails to allege that Capital One or GreenPoint was the servicer of the HELOC such that either would be obligated to respond to the QWR in compliance with the requirements of RESPA.** *See, e.g., Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199–1200 (C.D. Cal. 2008) (dismissing plaintiffs' RESPA claim because they failed to allege defendant was a loan servicer); *Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1199 (E.D. Cal. 2009) ("Without alleging that [defendant] is a 'loan servicer' under RESPA[,] plaintiffs cannot show that [defendant] owed any duty to respond to their QWR, and accordingly plaintiffs' RESPA claim against [defendant] must be dismissed."). Plaintiff's allegation that he "sent a written correspondence to Capital One constituting a 'qualified written request' in an attempt to obtain a proper accounting of the funds paid towards the Mortgage," (Compl. ¶ 18), is insufficient in this regard.

Second, even assuming Capital One or GreenPoint was the servicer of the HELOC, the facts as alleged indicate that Capital One actually responded to plaintiff's request within five days, as is required by RESPA. (Compl. ¶ 18 ("Capital One did not provide a response until August 22, 2018.").) If plaintiff's grievance is instead that the response was *insufficient* under RESPA, the complaint fails to describe the precise shortcomings. **Plaintiff must allege facts demonstrating *how* the response was insufficient.**

**Third, plaintiff's allegations of damages, which are identical to those regarding Real**

1 **Time, fail for the reasons previously discussed.** (*See supra* at 7–9.) In light of the foregoing,

2 plaintiff's RESPA claim as asserted against Capital One is **DISMISSED**. Plaintiff will be given

3 **LEAVE TO AMEND** so that he can address the deficiencies described.

### B. Second Cause of Action: FDCPA Violation

The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (alternation in original). To state a claim under the FDCPA, a plaintiff must allege facts that establish the following: "(1) [the] plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Ellis v. Phillips & Cohen Assocs., Ltd.,* No. 5:14-cv-05539-EJD, 2016 WL 3566981, at *3 (N.D. Cal. June 30, 2016) (quoting *Dang v. CitiMortgage, Inc.*, No. 5:11-cv-05036 EJD, 2012 WL 762329, at *3 (N.D. Cal. Mar. 7, 2012)).

Here, plaintiff alleges that Real Time is a debt collector within the meaning of the FDCPA and that its debt collection efforts violated the FDCPA because the underlying transfer of the HELOC's debt from GreenPoint to Real Time was "fraudulent." (Compl. ¶¶ 24, 25.) He bases this accusation on the grounds that: (i) at the time of the transfer, GreenPoint was "not a legally active corporate entity since 2011"; and (ii) "the assignment [of] the Deed of Trust contains a forged signature by Miguel Romero." (*Id*. ¶ 25.) Real Time disputes both.

First, according to the California Secretary of State's website, GreenPoint was an active and valid corporation doing business in California at the time it assigned its interest under the HELOC. *See* RRJN Exh. 1; *Potocki v. Wells Fargo Bank, N.A.*, No. 2:14-1050 WBS DAD, 2014 WL 2949286, at *1 n.1 (E.D. Cal. June 30, 2014) (noting that the accuracy of "filings with the California Secretary of State . . . is not subject to reasonable dispute").[11] Thus, without more, the

---

[11] In support of his argument that GreenPoint is not a legally active corporation in California and that it therefore had no power to assign plaintiff's loan, plaintiff attaches an article from The Center for Public Integrity from 2014 which notes that GreenPoint was "shut down" in 2007. (*See* Dkt. No. 34 at ECF p. 17.) The article is neither attached to a declaration nor corresponding request for judicial notice and is thus not properly before the Court. In any event, plaintiff likens "shutting down" to the termination of GreenPoint's status as an active corporate

Court need not accept this allegation as true.

Second, plaintiff's Exhibit A attached to the complaint does not show a signature reading "Miguel Romero." (*See* Compl. at ECF p. 15.) Rather, the document is signed by Notary Public "Dee Ann Westfall Cortes," who therein references a prior meeting with Mr. Romero. (*Id*.) While it is unclear from the face of the document who Mr. Romero is and how he is related to the HELOC, the Court notes that judicially noticeable matters indicate that in December of 2011, Mr. Romero was the Vice President of MERS. (*See* Assignment of Deed of Trust.) However, given that plaintiff complains of a forged signature relating to a transfer of the HELOC's debt from *GreenPoint* (not MERS) to Real Time which purportedly took place on or around July 25, 2018**, it is unclear whether and how Mr. Romero's alleged false signature would impact the transfer**.[12]

---

entity in California. The article does not refute that GreenPoint was an active legal entity capable of doing business in California in 2018 and of assigning the HELOC to Real Time. Plaintiff's reliance on the article is therefore unavailing.

The Court, however, finds Real Time's argument that plaintiff lacks standing in this pre-foreclosure context to challenge the transfer between Real Time and GreenPoint to be unpersuasive. Real Time relies on *Yvanova v. New Century Mortgage Corporation*, 62 Cal. 4th 919 (2016) and *Saterbak v. JP Morgan Chase Bank, N.A.*, 245 Cal. App. 4th 808 (2016) in support thereof. (*See* Dkt. No. 35 ("Real Time's Reply") at 3.) However, *Yvanova* is inapposite because the California Supreme Court there clarified that a borrower *subject to a nonjudicial foreclosure* "does not lack standing to sue for *wrongful foreclosure* based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." *Yvanova*, 62 Cal. 4th at 924 (emphases supplied). Here, plaintiff does not allege that a foreclosure of the Subject Property has taken place, nor does he assert a wrongful foreclosure claim. Moreover, in *Saterbak*, the plaintiff, who sought to stop a threatened foreclosure, alleged that the assignments of her loan were invalid because of untimely securitization of the deed of trust and robo-signing. The California Court of Appeal found that "California courts do not allow such preemptive suits because they 'would result in the impermissible interjection of courts into a nonjudicial scheme enacted by the California Legislature.'" *Id*. at 814 (quoting *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 513 (2013)). The instant case is distinguishable because plaintiff does not appear to be challenging Real Time's authority to *foreclose*. Additionally, as Real Time concedes, the holding in *Saterbak* "ha[s] applied to wrongful foreclosure actions and actions for declaratory relief and cancellation of a deed of trust[,]" which this case is not. (Real Time's Reply at 3.)

[12] Even if the signature somehow impacted the alleged transfer, this fact alone would not establish liability against Real Time because a debt collector that unknowingly relies on documents containing forged signatures by third parties does not violate the FDCPA. *See Bojrn v. Lender Processing Servs. (LPS)*, No. 10cv2620-LAB (NLS), 2011 WL 42873, at *2 (S.D. Cal. Jan. 6, 2011) ("The only debt collector the pleadings identify is the California Reconveyance Company ('CRC'), but the amended complaint alleges someone else . . . is responsible for the

11

Accordingly, plaintiff's FDCPA claim as asserted against Real Time is **DISMISSED**. Specifically, it is **DISMISSED WITHOUT LEAVE TO AMEND** to the extent it is based on plaintiff's allegation that GreenPoint was not a legally active corporation at the time it assigned its interest under the HELOC. Out of an abundance of caution, plaintiff is otherwise given **LEAVE TO AMEND**. However, it is not clear to the Court how plaintiff's allegations regarding the alleged forged signature of Mr. Romero could support a claim or whether another claim exists.[13]

### C. Third and Fourth Causes of Action: Fraud & Misrepresentation

To state a claim for fraud or intentional misrepresentation,[14] a plaintiff must allege a: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *see also Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1067 (N.D. Cal. 2013) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)); *Lyons v. Bank of Am., NA*, No. 11-01232 CW, 2011 WL 3607608, at *6 (N.D. Cal. Aug. 15, 2011). In addition, as explained above, plaintiff must satisfy the heightened pleading standard of Rule 9(b) to give defendants notice of the particular misconduct asserted in the complaint.

The Court discusses plaintiff's fraud and misrepresentation claims as asserted against Real Time and Capital One together because they are based on the same deceitful conduct,[15] namely:

---

forged signature . . . .").

[13] Because, as mentioned previously, plaintiff has conceded that the second cause of action is not asserted against Capital One, any amended complaint **shall not** assert an FDCPA claim against Capital One. (*See supra* at 5.)

[14] Plaintiff does not specify in the complaint whether his misrepresentation claim is based on intentional versus negligent misrepresentation. However, based on plaintiff's assertions regarding *knowledge* that the purported representations were false, (*see* Compl. ¶ 43), the Court interprets plaintiff's broad "misrepresentation" claim as one for *intentional* misrepresentation. *See Ryan-Beedy v. Bank of N.Y. Mellon*, 293 F. Supp. 3d 1101, 1109 (E.D. Cal. 2018) ("A cause of action for negligent misrepresentation must allege the same elements [as one for intentional misrepresentation], *except that a plaintiff need not show that the defendant knew of the falsity of the statement*, but rather that the defendant lacked reasonable ground for believing the statement to be true.") (emphasis supplied) (internal quotation marks omitted).

[15] Because plaintiff has not specified the defendant(s) against which each cause of action is asserted, it is not clear to the Court whether plaintiff asserts fraud and misrepresentation claims

12

(i) the transfer of the HELOC from GreenPoint to Real Time; (ii) the forged signature on the "assignment from the Deed of Trust"; (iii) the requirement for plaintiff to pay $3,670.58 in closing costs and $73,000 associated with his HELOC balance; (iv) and Real Time's statement to plaintiff that "[RRA CP] Opportunity Trust is an investor" of the HELOC. (*Compare* Compl. ¶¶ 37–41 *with id.* ¶¶ 43–48.) Plaintiff asserts the following in regard to his damages arising from Real Time's and Capital One's purported fraud:

> Plaintiff has been damaged since [p]laintiff has incurred court fees to enforce his legal rights, suffered severe emotional distress, and have [sic] suffered the slander of his reputation due to the fact that illegitimate and false information has been attributed to him and reported to credit reporting agencies and bureaus.

(*Id.* ¶¶ 41, 48.)

**A fundamental problem with plaintiff's claims is that plaintiff fails to identify any recoverable damages and fails to allege how he actually and justifiably relied upon the misrepresentations or how any of the asserted damages were caused by the actions he took in reliance on the misrepresentations.** On this basis alone, the claims are dismissible. Moreover, emotional distress damages are not recoverable in fraud actions. *See Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 67 (1988) ("Emotional distress is not recoverable as an element of damages for fraud."); *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *5 (N.D. Cal. Feb. 13, 1996) ("[I]n fraud actions, the injured party may not claim attorneys fees and emotional distress damages."). Additionally, court costs are not a separate measure of damages, nor is slander. Rather, slander is a separate claim with its own requirements. The Court provides the following additional guidance.

First, with respect to the transfer of the HELOC from GreenPoint to Real Time, plaintiff claims fraud because GreenPoint was not an active corporation in California. (*See* Compl.

---

against Capital One. Indeed, the complaint includes just one single allegation explicitly concerning Capital One. (Compl. ¶ 11.) However, as Capital One notes, plaintiff's third and fourth causes of action could be "conceivably construe[d] to have been made against [Capital One]" to the extent they are "based on the allegation that [GreenPoint] was not a valid corporation at the time that it assigned its interest under to [sic] loan to Real Time[,]" by virtue of the fact that Capital one is GreenPoint's parent company. (CMTD at 3.) The Court thus proceeds with its analysis of plaintiff's third and fourth causes of action accordingly.

13

¶¶ 38(a), 45(a).) As explained previously, judicially noticeable matters indicate that GreenPoint *was* an active and valid corporation doing business in California at the time it assigned its interest under the HELOC. (*See supra* at 10–11.)

Second, with respect to the forged signature, neither Real Time nor Capital One can be held liable absent allegations that the purported forger is associated with them. *Craver v. Nat'l City Bank*, No. CIV S-09-1276-CMK, 2010 WL 618285, at *5 (E.D. Cal. Feb. 17, 2010) ("A party cannot be held liable for fraud based on someone else's conduct, unless the actor is acting on behalf of the defendant and with the defendant's knowledge and permission, i.e., a principle/agent relationship.") (citing *Am. Soc'y of Mech. Eng'rs, Inc. c. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982)). Plaintiff's complaint does not establish that Mr. Romero was associated with Real Time or GreenPoint/Capital One at the relevant time period.[16] In addition, the complaint does not explain how plaintiff relied on any misrepresentations made in connection with a transfer of the HELOC's debt and, even if so, how his reliance was justifiable. He does not allege that he was a party to the subject assignment of the deed of trust, so no representations could have been made to him.[17] Even if the document contained a forged signature and Mr. Romero was associated with Real Time or GreenPoint/Capital One, plaintiff has not alleged how that misrepresentation caused him any harm. Thus, it is difficult to see how plaintiff could have suffered any loss due to any misrepresentations contained in the assignment of the deed of trust.

Third, with respect to the requirement that plaintiff pay $3,670.58 in closing costs and $73,000 associated with his HELOC balance, plaintiff's claims fail to the extent they are premised on the theory that Real Time was in no position to make such demands because GreenPoint's transfer of the HELOC's debt to Real Time was fraudulent. Insofar as the alleged misrepresentations by Real Time are grounded in other facts, plaintiff must specify what those facts are. Again, plaintiff must also specify how he justifiably relied on the purported

---

[16] As previously explained, judicially noticeable matters indicate that Mr. Romero was the Vice President of MERS in 2011.

[17] Plaintiff's allegation that he "justifiably relied on all of Real Time's misrepresentations and omissions since Real Time was a reputable loan servicer at the time" is conclusory and insufficient. (Compl. ¶¶ 40, 47.)

14

1    misrepresentations and how that reliance resulted in damages.

2    Fourth, with respect to Real Time's statement to plaintiff that "[RRA CP] Opportunity Trust is an investor," again, plaintiff fails to link the statement to his own situation. (Compl. ¶¶ 38(e), 45(e).) Plaintiff fails to identify precisely what reliance he placed on the purported misrepresentations and describe damages he suffered as a direct result.

Accordingly, plaintiff's fraud and misrepresentation claims are **DISMISSED**. Specifically, they are **DISMISSED WITHOUT LEAVE TO AMEND** to the extent they are based on plaintiff's allegation that GreenPoint was not a legally active corporation at the time it assigned its interest under the HELOC. They are otherwise **DISMISSED WITH LEAVE TO AMEND** so that plaintiff can plead specific allegations as to each element of his claims, including facts supporting reliance and damages, to the extent any exist.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Real Time's and Capital One's motions to dismiss as follows:

- Plaintiff's RESPA claims as asserted against Real Time and Capital One are **DISMISSED WITH LEAVE TO AMEND**;
- Plaintiff's FDCPA claim as asserted against Real Time is **DISMISSED WITHOUT LEAVE TO AMEND** to the extent it is based on plaintiff's allegation that GreenPoint was not a legally active corporation at the time it assigned its interest under the HELOC; it is otherwise **DISMISSED WITH LEAVE TO AMEND**.
- Plaintiff's fraud and misrepresentation claims are **DISMISSED WITHOUT LEAVE TO AMEND** to the extent they are based on plaintiff's allegation that GreenPoint was not a legally active corporation at the time it assigned its interest under the HELOC; they are otherwise **DISMISSED WITH LEAVE TO AMEND**.

Should plaintiff choose to amend, his First Amended Complaint must be filed no later than **Monday, May 13, 2019**. Any response thereto must be filed no later than **fourteen (14) days** thereafter.

The Court advises plaintiff that a Handbook for Pro Se Litigants, which contains helpful

information about proceeding without an attorney, is available in the Clerk's office or through the Court's website, http://cand.uscourts.gov/pro-se.

The Court also advises plaintiff that additional assistance may be available by making an appointment with the Legal Help Center. **There is no fee for this service**. To make an appointment with the Legal Help Center in San Francisco, plaintiff may visit the San Francisco Courthouse, located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, 94102, or call 415/782-8982. To make an appointment with the Legal Help Center in Oakland, plaintiff may visit the Oakland Courthouse, located at 1301 Clay Street, 4th Floor, Room 470S, Oakland, California, 94612, or call 415/782-8982. The Help Center's website is available at http://www.cand.uscourts.gov/helpcentersf.

As for plaintiff's pending request that the Case Management Conference currently set for April 22, 2019 be postponed, (Dkt. No. 49), it is **GRANTED**. The Court will reset the conference once the pleadings are set. Accordingly, plaintiff's request to appear telephonically at the same, (*id.*), is **DENIED AS MOOT**.

This Order terminates Docket Numbers 8, 12, and 49.

**IT IS SO ORDERED.**

Dated: April 11, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**