# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SALVADOR AGREDANO,**<br>Plaintiff,<br>vs.<br>**CAPITAL ONE, NATIONAL ASSOCIATION, ET AL.,**<br>Defendants. | CASE NO. 18-cv-06865-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 52, 55 |

This is the second round of briefing on the complaint filed by *pro se* plaintiff Salvador Agredano against defendants Capital One, N.A. ("Capital One") and Real Time Resolutions, Inc. ("Real Time"). On April 11, 2019, the Court entered an order granting defendants' motions to dismiss with leave to amend, except insofar as his claims were based on the allegation that GreenPoint Mortgage Funding, Inc. ("GreenPoint") was not a legally active corporation at the time it assigned its interest in plaintiff's debt to Real Time. (Dkt. No. 50 ("Order") at 15.) On May 13, 2019, plaintiff filed an amended complaint, re-alleging causes of action for (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (3) fraud; and (4) misrepresentation. (Dkt. No. 51 ("FAC"), ¶¶ 14–49.)[1]

Having carefully considered the pleadings in this action and the papers submitted,[2] the Court finds as follows:

---

[1] The factual background of this action is set forth in detail in the Court's prior order. (Order at 2–3.)

[2] Despite this Court's instructions that plaintiff must comply with the Civil Local Rules (Order at 5, n.7), plaintiff improperly filed sur-replies as to both defendants' motions. The Court once again advises plaintiff that no supplemental briefing should be filed absent compliance with Civil Local Rule 7-3(d).

*1. RESPA Claim Against Real Time*

In its prior order, the Court granted Real Time's motion to dismiss plaintiff's RESPA claim on grounds that plaintiff (1) failed to plead actual harm causally connected to the alleged RESPA violations, and (2) failed to explain how Real Time's failure to respond to plaintiff's QWR caused any alleged harm. (Order at 7–9.)[3]

In his amended complaint, plaintiff newly alleges that he suffered actual damages because Real Time "reported incorrect information to the credit bureaus, which [] cause[d] [p]laintiff to be denied refinancing options on three separate occasions." (FAC ¶ 21.) Although negative credit reports alone generally do not constitute actual damages for purposes of stating a RESPA claim, *see Petrovich v. Ocwen Loan Servicing, LLC,* 2015 WL 3561821, at *2 (N.D. Cal. June 8, 2015), allegations that plaintiff was denied specific refinancing opportunities as a result of said credit reports suffices to show actual damages. *See Anokhin v. BAC Home Loan Servicing, LP*, No. 2:10-CV-00395, 2010 WL 3294367, at *3 (E.D. Cal. Aug. 20, 2010) ("To constitute actual damages, the negative credit rating must itself cause damage to the plaintiff as evidenced by, for example, failing to qualify for a home mortgage."); *Hutchinson v. Delaware Sav. Bank FSB,* 410 F.Supp.2d 374, 382 (D.N.J. 2006) (plaintiffs adequately alleged damages under RESPA where they alleged that defendants continued to report late payments to credit bureaus after receiving QWRs, damaging plaintiffs' credit and precluding them from obtaining other loans); *cf., Stoimenova v. Select Portfolio Servicing*, No. 5:15-CV-01504-RMW, 2015 WL 4880943, at *4 (N.D. Cal. Aug. 14, 2015) (plaintiff failed to allege actual damages in support of RESPA claim where he did not "allege that he suffered actual pecuniary harm from the negative [credit] reporting").

Further, drawing all reasonable inferences in plaintiff's favor, it is plausible that Real Time's "fail[ure] to provide an accounting to justify the balance it claims [it] is owed" caused the

---

[3] The Court's prior order also found that plaintiff had plausibly alleged that his letter to Real Time was a QWR and that Real Time had not responded to the QWR with the information requested. (Order at 6–7.) Because plaintiff has not meaningfully changed the allegations relevant to these findings, the findings still hold.

alleged damages. For example, had Real Time timely and adequately responded to plaintiff's QWR, plaintiff could have taken additional steps to correct any inaccuracies, thereby preventing Real Time from reporting allegedly incorrect information to credit bureaus. *See Johnson v. HSBC Bank USA, Nat. Ass'n,* 3:11-CV-2091-JM-WVG, 2012 WL 928433, at *6 (S.D. Cal. Mar. 19, 2012) (where plaintiff alleged that defendant failed to provide a substantive response to QWR, causing confusion over how much plaintiff actually owed, defendant's failure to respond to the QWR plausibly caused harm).[4]

Thus, the Court finds that the allegations in the FAC are sufficient to state a RESPA claim against Real Time at this stage in the proceedings. Thus, Real Time's motion to dismiss plaintiff's RESPA claim is **DENIED**.

*2. RESPA Claim Against Capital One*

The Court's prior order identified three specific deficiencies in plaintiff's RESPA claim against Capital One: (1) Plaintiff failed to allege that Capital One was the servicer of the loan such that it would be obligated to respond to the QWR under RESPA; (2) plaintiff did not allege facts demonstrating *how* Capital One's response to plaintiff's QWR was insufficient; and (3) plaintiff failed to allege recoverable damages. (Order at 9–10.)

In the FAC, plaintiff cures the first deficiency by alleging that "Real Time and Capital One were servicers of the Loan within the meaning of RESPA." (FAC ¶ 15.) Plaintiff does not, however, cure the second deficiency. Rather, plaintiff merely re-alleges the following in support of his RESPA claim against Capital One:

> On or about August 18, 2018, Plaintiff sent a written correspondence to Capital One constituting a "qualified written response" in an attempt to obtain a proper accounting of the funds paid towards the Mortgage. The qualified written request pertained to the servicing of the loan because it sought an accounting and

---

[4] RESPA provides that "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency[.]" 12 U.S.C. § 2605(e)(3). Although the FAC is silent as to whether Real Time provided information to credit bureaus regarding an *overdue payment*, it is at least plausible that this provision may have been triggered by Real Time's conduct.

3

documentation to justify the balance that Real Time claims is owed on the
Mortgage. Capital One did not provide a response until August 22, 2018.

(FAC ¶ 18.) The FAC contains no other factual allegations regarding the substance of Capital One's QWR response. Further, although plaintiff alleges that "Defendant [] failed to respond in a proper and timely way" to his QWRs and "the response was not responsive to the requests made by Plaintiff" (*id.* ¶ 20), plaintiff does not specify the defendant(s) to which these allegations apply, and in any event, such allegations, without more, are far too general to support the RESPA claim.

As to the third deficiency, that is, plaintiff's failure to allege recoverable damages, plaintiff has supplemented his damages allegations to demonstrate a plausible theory of harm based on his loss of refinancing opportunities. (FAC ¶ 22.) However, without any explanation as to how Capital One's QWR response was insufficient, plaintiff cannot link the alleged damages to any alleged misconduct by Capital One.

Given plaintiff's failure to address the deficiencies set forth in the Court's prior order, plaintiff appears unable to state a plausible RESPA claim against Capital One. Accordingly, this claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

*3.    FDCPA Claim Against Real Time[5]*

In its prior order, the Court dismissed plaintiff's FDCPA claim with prejudice to the extent it was based on the allegation that GreenPoint was not an active corporate entity at the time it transferred the debt to Real Time, and otherwise afforded plaintiff leave to amend. With respect to plaintiff's theory that Real Time violated the FDCPA because the assignment of the Deed of Trust contained the forged signature of Miguel Romero, the Court noted that it was "unclear whether and how Mr. Romero's alleged false signature would impact the transfer," and accordingly, whether a claim existed. (Order at 11–12.)

Although the FAC supplements the initial allegations regarding forgery by alleging that Mr. Romero is an agent of Real Time, and that a third party forged Mr. Romero's signature at Real

---

[5] The Court's prior order warned that "any amended complaint **shall not** assert an FDCPA claim against Capital One." (Order at 12, n.14, emphasis in original.) The FAC does not appear to assert any such claims, and thus, the Court analyzes plaintiff's FDCPA claim as against Real Time only.

4

Time's direction, plaintiff still makes no attempt to explain the impact of the alleged forged signature on the transfer. Indeed, plaintiff's allegations that Real Time directed someone to sign the assignment and ratified the transfer by attempting to collect on the loan undermine his theory that the alleged forged signature of a Real Time agent rendered the transfer fraudulent.

Further, the FAC re-alleges that Real Time violated the FDCPA when, on September 11, 2018, Real Time called plaintiff, stated that he owed $73,000, and told him the only way to settle the debt was to pay the balance or to sell his home. (FAC ¶ 28.) In his opposition, plaintiff argues that Real Time had no authority to attempt to collect funds because the transfer of the debt was fraudulent. (Dkt. No. 62, at 8.) Plaintiff's argument fails to persuade. Plaintiff bases his claim that the phone call violated the FDCPA on theories regarding GreenPoint's corporate status and the forged signature. Because the court rejects these theories, plaintiff has not shown that the phone call constituted an FDCPA violation.[6]

Despite having the opportunity to amend the complaint, plaintiff has not alleged any facts suggesting an FDCPA claim exists. Because further amendment would be futile, the Court **DISMISSES** plaintiff's FDCPA claim **WITHOUT LEAVE TO AMEND**.[7]

---

[6] Plaintiff's FDCPA claim also fails because it is not clear that Real Time was a "debt collector" within the meaning of the FDCPA. Under the FDCPA, "any person who offers or extends credit creating a debt *or to whom a debt is owed*" is a creditor, not a debt collector. 15 U.S.C. § 1692a(4) (emphasis supplied). Further, "it is well-established that . . . a loan servicer is not a 'debt collector' under the FDCPA." *Okada v. Green Tree*, No. C-10-0487 JCS, 2010 WL 1573781, at *3 (N.D. Cal. Apr. 19, 2010) (citing cases); *Morgan v. U.S. Bank Nat. Ass'n*, No. C 12-03827 CRB, 2012 WL 6096590, at *6 (N.D. Cal. Dec. 7, 2012) (noting that legislative history of the FDCPA "which highlights Congress's intent to police the coercive, unrestrained activities of third party debt collectors as distinct from debt servicers"). Accepting as true plaintiff's allegation that Real Time was a loan servicer required to respond to his QWR, plaintiff does not explain whether or when Real Time transitioned into a debt collection role. Moreover, because plaintiff has not adequately alleged that the transfer of the debt to Real Time was fraudulent, Real Time's attempt to collect on *its own* debt would not render it a "debt collector" under the FDCPA.

[7] Paragraph 25 of the FAC alleges that "Defendant Plunkett" is a debt collector within the meaning of the FDCPA statute. The FAC makes no other allegations as to "Defendant Plunkett," nor is it clear to whom defendant is referring. Because the FAC elsewhere alleges that Real Time is a debt collector within the meaning of the FDCPA (FAC ¶ 16), the Court takes this allegation as true and does not render any findings as to the allegation regarding "Defendant Plunkett."

*4. Fraud and Misrepresentation Claims Against Both Defendants[8]*

The Court previously dismissed plaintiff's fraud and misrepresentation claims on the ground that plaintiff "fail[ed] to identify any recoverable damages and fail[ed] to allege how he actually and justifiably relied upon the misrepresentations or how any of the asserted damages were caused by the actions he took in reliance on the misrepresentations." (Order at 13.) As discussed herein, plaintiff has adequately alleged that he suffered actual damages as a result of Real Time providing inaccurate reports to credit bureaus, which caused plaintiff to be denied three refinancing opportunities. (FAC ¶¶ 21–22.) However, plaintiff does not explain how these damages were caused by his reliance on any misrepresentations by Real Time or Capital One.

In the FAC, plaintiff also alleges that "[e]very amount that Plaintiff paid towards the fraudulent loan balance reflects actual damages since Plaintiff paid money to a debt that did not actually exist." (*Id*.) Plaintiff's theories as to why the loan balance was "fraudulent" and "did not exist" cannot, however, support his fraud and misrepresentation claims, particularly under the stricter standards of Federal Rule of Civil Procedure 9(b). First, as discussed herein, plaintiff's allegations regarding GreenPoint's corporate status and Mr. Romero's forged signature do not support a finding that the loan transfer was fraudulent. Second, plaintiff's contention that the September 11, 2018 phone call was improper is based on his allegations regarding GreenPoint's corporate status and the forgery, and thus, fails for the same reasons. Third, with respect to plaintiff's allegation that he was told he would owe $3,670.58 in closing costs on the debt, this Court previously instructed plaintiff to allege additional facts about this purported misrepresentation in order to support his claims. (Order at 14–15.) Plaintiff has not alleged any such additional facts. Fourth, plaintiff's allegation that Real Time misrepresented "that RRACP Opportunity Trust is a separate entity to elude the questions regarding ownership of the debt at issue" again is based on his allegation that Real Time did not legally own the debt due to the

---

[8] Although the FAC, like the initial complaint, does not contain any allegations regarding fraud or misrepresentation as to Capital One, insofar as these causes of action could conceivably have been alleged against both defendants, the Court discusses these claims as asserted against Real Time and Capital One together.

fraudulent transfer, an allegation that this Court rejects.

Even after amendment, plaintiff has failed to allege a plausible claim for fraud or misrepresentation, nor is it evident that such a claim exists. Accordingly, the Court **DISMISSES** plaintiff's fraud and misrepresentation claims **WITHOUT LEAVE TO AMEND**.

*****

For the foregoing reasons, the Court (1) **GRANTS** the motions to dismiss **WITHOUT LEAVE TO AMEND** as to plaintiff's RESPA claim against Capital One, FDCPA claim against Real Time, and fraud and misrepresentation claims against both defendants; and (2) **DENIES** the motion to dismiss plaintiff's RESPA claim against Real Time.

Accordingly, Capital One is hereby **DISMISSED** from this case. Real Time shall respond to plaintiff's RESPA claim within **fourteen (14) days** of this order. Further, a Case Management Conference shall be set for **Monday, August 26, 2019** at **2:00 p.m.** in the Federal Building, 1301 Clay Street, Oakland in Courtroom 1.

In addition, pursuant to Civil Local Rule 16-8 and ADR Local Rule 2-3, the Court hereby **REFERS** this action to the Alternative Dispute Resolution (ADR) Unit for a telephone conference to assess this case's suitability for court-sponsored mediation, settlement conference, early neutral evaluation, or other ADR methods. The parties shall participate in a telephone conference, to be scheduled by the ADR Unit as soon as possible. The ADR Unit will notify the parties of the date and time the telephone conference will be held. After the telephone conference, the ADR Unit will advise the Court of its recommendation for further ADR proceedings.

This Order terminates Docket Numbers 52 and 55.

**IT IS SO ORDERED.**

Dated: July 16, 2019

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

cc: ADR

7